FRANCIS DARBY *versus* HARRISON HAYFORD.

Where the sanity of a grantor, at the time of executing a deed of the land in controversy, is in issue, the party seeking to uphold the deed cannot justly complain of the instruction, that mere nervous excitement or mental weakness would not be sufficient to defeat the operation of the deed; but, if the grantor had the mental capacity to know and rationally understand and comprehend the nature of the business she was then transacting, that was all the law required to render her deed effectual.

When additional instructions in matters of law are desired, specific requests should be made.

A refusal to instruct generally as to the legal bearing of selected portions of the testimony is no ground of exceptions.

Although the reading of the reported evidence may incline the members of this Court to the opinion that, sitting as jurors, they would have found a different verdict; still, if there be testimony on the part of the party in whose favor it is rendered, amply sufficient to account for the verdict, without supposing any corruption, undue influence, bias or passion, on the part of the jury, the verdict will not be set aside as being against the weight of evidence.

ON EXCEPTIONS.

REAL ACTION to recover a parcel of land situated in Belfast, tried on a writ of review sued out by the defendant. The original writ was dated April 19, 1864.

The plaintiff claimed title under a deed of warranty from Mary A. Butler to himself, dated, acknowledged and recorded April 15, 1864. The defendant claimed title under a quitclaim deed from Phebe C. Brown to himself, dated April 26, 1862, and a deed of warranty from Mary A. Butler to Phebe C. Brown, dated Aug. 18, 1860, both duly acknowledged and recorded.

The plaintiff contended that Mary A. Butler was insane Aug. 18, 1860, when she executed her deed to Phebe C. Brown, but that she had become sane April 15, 1864, when she executed her deed to him.

It was in evidence that the consideration of the deed of Aug. 18, 1860, was a loan of $200 for one year, with an agreement to reconvey if the money was repaid at the end of the year.

Darby *v.* Hayford.

There was testimony tending to prove that the defendant repeatedly told Benj. Brown and Phebe C. Brown, between Aug. 18, 1860, and April 15, 1862, that Mary A. Butler's deed to the latter was void on account of the insanity of Mrs. Butler at the time of executing it; that the Browns had investigated the subject of her insanity and finally conveyed to the defendant in consideration of $200, having come to the conclusion that she was insane; that the defendant said, before conveyance to him, that he was intending to sell the place as guardian.

The plaintiff put in a petition to the Judge of Probate for this county, dated March 9, 1861, praying that the defendant be appointed guardian of Mary A. Butler.

The exceptions appear in the opinion.

*F. S. Nickerson,* for defendant.

1st. The first requested instruction was correct and was improperly withheld. The instruction given did not contain the substance of the request. It was too broad and involved upon the general question of insanity, and clearly so in this case.

2d. The testimony clearly shows a bond or obligation given back. "If the transaction" or "business" referred to had only related to the deed of Aug. 18, 1860, defendant's position might be doubted, but the instruction given required the jury to inquire into the "nature" of the transaction, (sort — kind) and see if Mrs. Butler knew and could "comprehend and understand the nature of the business she was then transacting," — the whole of it — including the writing given back by Brown. Not alone the thing done, transacted, or performed; but its legal effect or "nature." The jury might well have believed that she knew very well all about parting with her property, receiving pay, and making even a good trade; yet, if she did not understand the nature of the writing given back by Brown, that she still lacked the "mental capacity to understand and comprehend the nature of the business then transacting." There was a

question, whether or not, this writing was under seal. Was she expected to " understand and comprehend" so far the " nature of this business" as to know whether or not this writing constituted a mortgage or not?

3d. " No mental weakness" would be sufficient to defeat the operation of the deed; not " mere nervous excitement or mental weakness." It is sufficient, if she knew what she was " about" when she signed the deed; though she might not know the "nature" of the bond or obligation. *Hovey* v. *Chase*, 52 Maine, and cases cited. Chitty on Contracts, 588, 130, 132.

4. If the second requested instruction had been given, the jury would not have been led into an error in relation to. the defendant's appointment as guardian of Mrs. Butler.

The counsel also elaborately argued the motion.

*Jewett*, for the plaintiff.

BARROWS, J. — The demandant and tenant both claim under conveyances made by Mary A. Butler. That under which the tenant holds was prior in time, by some years, but the sanity of the grantor, at the time it was made, and consequently her capacity to convey, are controverted.

The tenant's counsel contended at the trial that the burden of proof was on the plaintiff to satisfy the jury not only that she was of unsound mind at the date of the deed, but that her insanity or imbecility was of such character or degree as to render her incapable of understanding what she was doing when she signed the deed.

The presiding Judge did not so charge ; but, after instructing the jury with due care and distinctness as to the burden of proof which was resting on the plaintiff, and as to the presumption of sanity, he told them that the practical question for them to answer was this ; — " When, on the 18th day of August, 1860, Mrs. Butler signed and acknowledged the deed from her to Mrs. Brown, did she know and rationally understand and comprehend what she was doing? Mere nervous excitement or mental weakness would not be

Darby v. Hayford.

sufficient to defeat the operation of the deed. If she had the mental capacity to know and rationally understand and comprehend the nature of the business she was then transacting, that was all that the law would require to render her deed effectual."

The tenant cannot justly complain of these instructions.

His own position might be objectionable, as not defining with sufficient care and exactness the mental capacity requisite to give an intelligent assent to the contract and make a valid conveyance.

It is not perceived that the instructions actually given materially differ from those which were approved in *Hovey* v. *Chase*, 52 Maine, 304, and *Hovey* v. *Hobson*, 55 Maine, 256. They do not require the jury to find that the grantor minutely and perfectly comprehended the legal results of the bargain she was making, or knew and understood whether the deed she gave, and the writing she received, did or did not constitute a mortgage, as the counsel ingeniously argues. The jury could not have so understood them. The call is substantially for a decision of the question whether, at the time of the conveyance, the grantor was in possession of mental capacity sufficient to transact the business with intelligence, understanding rationally what she was doing. Less than this would not suffice to make a valid contract or conveyance; for the intelligent assent, that is necessary, would be wanting.

It appears, by the exceptions, that, at the close of the Judge's charge, defendant's counsel requested him generally "to instruct the jury as to the proper legal bearing and character of the testimony and evidence of and concerning defendant's proceedings in, and the doings, acts and decrees of the Probate Court, and the conversation, offers, bargains or transactions of defendant to and with Mr. or Mrs. Brown, as bearing upon the transaction of August 18th, 1860."

A refusal to comply with such a request is not a subject of exceptions. When counsel wish for additional instruc-

Darby v. Hayford.

tions in matters of law, they should make specific requests, in writing, if desired by the Judge, so that he may have the subject matter so placed before him as to be able to determine whether the propositions are tenable and pertinent. If instructions of this description, thus requested, are refused and nothing equivalent given, exceptions will be sustained. But a refusal to comment generally upon selected portions of the testimony, can, in no case, be the ground of exceptions. It is for the presiding Judge to determine finally how far his duty requires him to discuss or rehearse the testimony. We do not sit as a Law Court to revise his doings in this respect. We are to ascertain only whether the law in the case was correctly laid down.

A sufficient reason for refusing to sustain exceptions for such a cause is to be found in the fact that it would be impossible to determine whether the party excepting was unfavorably affected by the omission.

It belongs to the counsel, not to the Court, to argue the facts to the jury, nor can he call upon the Judge to reiterate or enforce his observations upon them. With regard to the motion to set aside the verdict as against evidence, — it may be that a jury of experts would have come to a different conclusion as to the capacity of this woman to convey her lands. It may be that the reading of this report will incline the members of this Court to the opinion that, sitting as jurors, they would have found a different verdict. But it is hardly necessary to say, that this alone will not authorize us to sustain the motion. The case has been once before tried with the same result, and there is testimony on the part of the plaintiff amply sufficient to account for the verdict, without supposing any corruption, undue influence, bias, prejudice or passion, on the part of the jury.

*Motion and exceptions overruled.*

APPLETON, C. J., KENT, WALTON and DANFORTH JJ., concurred.